UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD HESTER,

                             Plaintiff,                      6:23-CV-01171 (AMN/TWD)

v.

DAVID SALLE and ZACKERY WHITE,

                             Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

**RONALD HESTER**
3007 Camino Real Drive South
Kissimmee, Florida 34744
Plaintiff, *pro se*

**THE LAW OFFICE OF KEVIN G. MARTIN**     **KEVIN G. MARTIN, ESQ.**
1600 Genesee Street
Utica, New York 13502
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On September 12, 2023, Plaintiff *pro se* Ronald Hester commenced this action pursuant to 42 U.S.C. § 1983, alleging constitutional, statutory, and common law claims against the City of Oneida, Oneida County Police, Oneida County Sheriff's Department, Rome Police, Officer Charles Zonnevylle, Officer Aarron Page, Detective David Salle, and Officer Zackery White stemming from events that occurred following a traffic stop in January 2023. *See* Dkt. No. 1 at 5

1

(the "Complaint").[1]  Plaintiff sought leave to proceed *in forma pauperis* ("IFP"), and on November 14, 2023, the Court granted Plaintiff's application.  *See* Dkt. Nos. 2, 4.  Following the Court's initial review of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the City of Oneida was dismissed from the action with prejudice, the Oneida County Police, Oneida County Sheriff's Office, and the Rome Police were dismissed from the action without prejudice, and Plaintiff's Fourth Amendment false arrest and false imprisonment claims against Detective Salle, Officer Zonnevylle, and Officer Page were dismissed without prejudice and with leave to amend.  *See* Dkt. No. 5 at 5-6.  Plaintiff was advised of his right to pursue any claim dismissed without prejudice through the filing of an amended complaint, and that such amended complaint needed to be filed within thirty days of this Court's Order adopting the Report-Recommendation.  *See id.* at 6.  Plaintiff chose not to file an amended complaint, and therefore the only remaining claim is Plaintiff's Fourth Amendment unlawful search claim against Detective Salle and Officer White ("Defendants") based on a visual body cavity search performed by them.  *See id.* at 5-6.

Defendants answered the Complaint on July 8, 2024, asserting various affirmative defenses.  *See* Dkt. No. 21.  On September 20, 2024, Magistrate Judge Dancks issued a pretrial scheduling order, setting forth various deadlines for, *inter alia*, pretrial discovery and motions.  *See* Dkt. No. 26.  The pretrial scheduling order directed the parties to exchange Rule 26(a)(1) mandatory disclosures by September 23, 2024, and to complete discovery on or before April 14, 2025.  *See id.* at 1-2.  However, on December 9, 2024, Plaintiff filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).  *See* Dkt. No. 29 (the "Motion").  Defendants opposed

---

[1] Citations to Court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

the Motion on December 30, 2024, *see* Dkt. Nos. 30-31, and Plaintiff filed a reply on January 6, 2025, *see* Dkt. No. 32.  The Motion is now ripe for adjudication.

For the reasons set forth below, Plaintiff's Motion is denied.

## II. BACKGROUND

### A. The Parties

Plaintiff Ronald Hester is a resident of Kissimmee, Florida who, prior to the events underlying this action, had been arrested in Rome, New York and charged with a drug offense and two weapons offenses.  *See* Dkt. No. 1-1 at 4.

Defendant David Salle is a Detective with the Rome Police Department, which has an office located at 301 N. James Street in Rome, New York, and acts as an agent of Oneida County, a municipal corporation duly organized and existing under the laws of the State of New York.  *See* Dkt. No. 21 at ¶ 3.  Defendant Zackary White is an Officer with the Rome Police Department.  *See id.*

### B. Plaintiff's Fourth Amendment Claim

Plaintiff's remaining claim against Defendants arises out of a traffic stop and Plaintiff's subsequent arrest, which resulted in Plaintiff being indicted for Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Firearm.  *See* Dkt. No. 1-1 at 1.

Specifically, on January 3, 2023, Defendant Salle was conducting surveillance of a residence as part of an investigation into a "shots fired" incident when Plaintiff was seen exiting the residence with two other individuals and entering a vehicle with an expired Florida registration. *See id*. at 2.  Upon discovering that Plaintiff was the owner of the vehicle and also had a suspended New York driver's license, Defendant Salle contacted other members of the Rome Police Department and subsequently conducted a traffic stop of the vehicle with Officers Page and

3

Zonnevylle. *Id.* The driver of the vehicle, Jessica Reed, informed the officers that her license was also suspended and, as a result, was taken into custody. *Id.* Plaintiff and the other vehicle occupant were not detained and left the scene. *Id.* at 3. The officers then conducted an inventory search of the vehicle and discovered a handgun in the spare tire compartment. *Id.*

After securing the handgun, Plaintiff was located and taken into custody. *Id.* at 4. Defendant was interviewed twice by Defendant Salle and, most notably for purposes of Plaintiff's Fourth Amendment claim, subjected to a visual body cavity search that was observed by Defendant White. *Id.* Defendants directed Plaintiff to remove his clothes and then squat and cough, at which point Office White observed a "foreign object" under Plaintiff's scrotum. *Id.* Plaintiff was directed to remove the item, which Defendants suspected was cocaine. *Id.*

As part of his subsequent criminal case in state court, Plaintiff moved to suppress certain oral statements that he made during the interviews with Defendant Salle, as well as the evidence that was seized during both the traffic stop and visual body cavity search. *See generally id.* At the suppression hearing, Defendant Salle was questioned about the basis for conducting the body cavity search, and he testified that the search was conducted based solely on Plaintiff's criminal history that included a prior drug offense. *Id.* at 4. It was also discovered during the suppression hearing that the officers who conducted the inventory search of Plaintiff's vehicle did not complete the inventory record of the entire contents of the vehicle, in violation of Rome Police policy. *Id.* at 3. Accordingly, Judge Robert L. Bauer of Oneida County Court found that the inventory search of Plaintiff's car was not legal as it was equivalent to "impermissible 'general rummaging' to discover incriminating evidence" and accordingly suppressed the recovered gun from evidence. *Id*. at 9. Judge Bauer also held that Plaintiff's drug offense, which was nine years old, standing

alone could not justify the "distinctly elevated level of intrusion" of the visual body cavity search and accordingly suppressed the cocaine recovered from Plaintiff's person. *Id.* at 10.

### C. The Motion

Prior to the close of discovery, Plaintiff filed the instant Motion, seeking judgment in his favor because, according to Plaintiff, "[D]efendants have knowingly violated the [P]laintiff's constitutional rights and have testified under oath to doing so." Dkt. No. 29 at 1. The Motion is devoid of record citations, and appears to rely exclusively on Judge Bauer's July 26, 2023 Decision and Order granting Plaintiff's state court motion to suppress certain evidence. *See generally id.* Plaintiff essentially argues that, since Defendant Salle testified at the suppression hearing that the body cavity search was based solely on Plaintiff's nine-year-old drug conviction, and because Judge Bauer already found that conviction alone was insufficient to justify a body cavity search, Plaintiff has established that his Fourth Amendment rights were violated and that he is entitled to summary judgment.

As Defendants point out in their Opposition, Plaintiff failed to include a notice of motion, supporting affidavit, and statement of material facts alongside the Motion in accordance with Northern District of New York Local Rule 7.1(b). *See generally id.*; *see also* Dkt. No. 30-2 at 3-7. Defendants also argue that the Motion is premature, since, *inter alia*, Plaintiff has not provided Rule 26(a) mandatory disclosures, has not responded to any of Defendants' discovery requests, and has not yet been deposed. *See* Dkt. No. 30-2 at 7. Moreover, Defendants assert that are also substantive issues of fact that preclude summary judgment, including (1) whether Plaintiff's "violent crime history" played a role in Defendants' decision to conduct a body cavity search, which was noted but not thoroughly discussed in Judge Bauer's Decision and Order; (2) whether the search of Plaintiff was minimally intrusive; and (3) whether a statement made by Jessica Reed

5

after the search was conducted that Plaintiff had drugs on his person rendered an otherwise unlawful search lawful.  *See id.* at 9.

### III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

The party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [his] right to judgment as a matter of law."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted).  To determine whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997).  The Court should "grant summary judgment where the nonmovant's evidence is merely colorable,

conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

Because Plaintiff is proceeding *pro se*, the Court must "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (citation omitted). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citations omitted). "Those requirements include the obligation not to rest upon mere conclusory allegations or denials, but instead to set forth 'concrete particulars' showing that a trial is needed." *Id.* (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).

## IV.  DISCUSSION

### A.  Procedural Issues

The Supreme Court and Second Circuit have long maintained that even *pro se* litigants must adhere to a district court's procedural rules. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation omitted); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) ("Although *pro se* litigants should be afforded latitude, . . . they generally are required to inform themselves regarding procedural rules and to comply with them. . . . This is especially true in civil litigation.") (internal quotation marks and citations omitted). This includes the need to comply with Northern District of New York Local Rule 7.1(b), which requires parties moving for summary judgment to include with their motion, *inter alia*, (1) an affidavit containing the factual and procedural background relevant to the motion; and (2) a

statement of material facts setting forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine dispute. Courts within this District have not hesitated to deny a *pro se* party's motion for summary judgment based on their failure to comply with Local Rule 7.1(b). *See, e.g.*, *Reed v. McGrath*, No. 9:19-CV-1203, 2021 WL 6750625, at *3 (N.D.N.Y. Dec. 22, 2021) (citing cases), *report-recommendation adopted*, 2022 WL 252170 (N.D.N.Y Jan. 27, 2022).

Additionally, a movant's *pro se* status does not excuse the requirement that he or she must present evidence to the Court in an admissible form to have a summary judgment motion decided in his or her favor. *See* Fed. R. Civ. P. 56(c); *see also Quinones v. City of New York*, No. 16-CV-00985, 2019 WL 6736784, *5 (S.D.N.Y. July 18, 2019) ("[A] *pro se* plaintiff, like any other party, must come forward with evidence in admissible form that is capable of refuting those facts"); *Carter v. Fresenius Kabi USA, LLC.*, No. 19-CV-01183, 2022 WL 2757726, *7 (W.D.N.Y. Jan. 12, 2022) ("Carter's '*pro se* status does not excuse him from taking necessary discovery in a timely manner and responding to summary judgment with admissible evidence'") (quoting *Tramble v. Columbia Univ.*, No. 97-Civ-1271, 1999 WL 61826, *13 (S.D.N.Y. 1999)); *c.f. Bryant v. Whitmore*, No. 9:14-CV-1042, 2016 WL 7188127, *3 (N.D.N.Y. Nov. 4, 2016) ("In deference to Plaintiff's *pro se* status, the Court has opted to review the entire record in this case. . . . However, the Court's review has revealed that Plaintiff's submissions contain very little in the way of admissible evidence.").

Here, the Motion consists of only a seven-page memorandum of law and a two-page proposed order that essentially recites the allegations made in Plaintiff's Complaint. *See generally* Dkt. No. 29. The Motion does not include a separate statement of material facts or supporting affidavit and does not cite to any record evidence at all, referring only to Judge Bauer's Decision

8

and Order as well as Magistrate Judge Dancks' Report-Recommendation that relied on the same. *See, e.g.*, Dkt. No. 29 at 3.  Yet, despite this, Plaintiff argues in conclusory fashion that "[t]he record is clear that the plaintiff was arrested by the defendants and a cavity search was performed in violation of his [F]ourth [A]mendment rights." *Id.* at 7.  But the "record" Plaintiff references is not apparent to the Court.  Plaintiff has not, for example, taken deposition testimony, exchanged documents, and in fact appears to have declined to engage in any meaningful form of discovery. *See* Dkt. No. 30-2 at 7.  And to the extent Plaintiff relies entirely on the findings contained in Judge Bauer's Decision and Order,[2] even if the Court assumes that the Decision and Order is admissible under Fed. R. Evid. 803(8), such reliance is misplaced for the reasons discussed in more detail below.[3]

Accordingly, as Plaintiff has failed to comply with this Court's Local Rules, as well as the requirements under Fed. R. Civ. P. 56(c), the Court is unable to find, based on the deficient record before it, that Plaintiff is entitled to the dispositive relief requested.

### B. Substantive Issues

Alternatively, the Court denies the Motion on the ground that Plaintiff has not met his burden to demonstrate the absence of any genuine issue of material fact.

---

[2] Plaintiff's Reply brief attaches a few other documents, namely (1) Plaintiff's memorandum submitted in support of his state court motion to suppress; (2) a transcript from the state court suppression hearing; (3) a HIPAA release form submitted during the suppression hearing; and (4) belated interrogatory responses, which reiterate arguments pertaining to the suppression hearing. *See* Dkt. Nos. 32-1, 32-2, 32-3, 32-4.  While the Court may decline to consider "evidence submitted with reply papers," *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Repub. of Venezuela*, 341 Fed. Appx. 722, 724 (2d Cir. 2009), given Plaintiff's *pro se* status, it will consider them as part of the "record" Plaintiff references.  However, because the documents submitted for the first time on Reply relate entirely to the state court suppression hearing, they do not alter the Court's conclusions for the reasons discussed pertaining to Judge Bauer's Decision and Order.

[3] While Plaintiff has not requested that the Court take judicial notice of Judge Bauer's Decision and Order, given his *pro se* status, the Court chooses to do so *sua sponte*.  Fed. R. Evid. 201(c)(1).

To determine whether Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable searches, the Court must first examine whether Defendants conducted the visual body cavity search[4] (1) incident to arrest, *see Sloley v. VanBramer*, 945 F.3d 30 (2d Cir. 2019); or (2) pursuant to a blanket policy requiring visual body cavity searches for all pretrial detainees, *see Bell v. Wolfish*, 441 U.S. 520 (1979).  If the search was conducted incident to arrest, Plaintiff must show that Defendants did not have a "factual basis supporting a reasonable suspicion to believe that [Plaintiff] secreted evidence inside [his] body cavity."  *Sloley*, 945 F.3d at 38.  If the search was conducted pursuant to a blanket policy requiring visual body cavity searches of all pretrial detainees, the constitutionality of the policy and, thus, the reasonableness of the search, depends on "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted."  *Bell*, 441 U.S. at 559.  Either way, Plaintiff bears the burden of demonstrating that the visual body cavity search was, in some way, unreasonable.  *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (*per curiam*)) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'").

First, the parties disagree regarding which of these standards applies.  While not explicit, Plaintiff's reliance on *Sloley*, *see* Dkt. No. 29 at 6, as well as his statement that he "was arrested by the defendants and a cavity search was performed in violation of his [F]ourth [A]mendment rights," *id.* at 7, implies that Plaintiff believes that the standard pertaining to body cavity searches incident to arrest applies.  In contrast, Defendants explicitly argue that "Plaintiff was being held in

---

[4] The parties do not appear to dispute that (i) the arrest of Plaintiff was lawful; and (ii) the type of search that was conducted was a visual body cavity search.  *See Sloley*, 945 F.3d at 41 (noting that visual body cavity searches incident to arrest must occur incident to "any *lawful* arrest") (emphasis added); *see also Towns v. Stannard*, 431 F. Supp. 3d 44, 60-61 (N.D.N.Y. 2019) (discussing the different categories of searches and the applicable reasonableness standards).

the Justice Center cell due to the discovery of a weapon in the trunk of his car. The visual cavity search in this case was pursuant to the safe administration of the holding cells at the Rome Policy facility" and that "[a]ccordingly, this case is closer to the line of cases following *Bell v. Wolfish*, 441 U.S. 520." Dkt. No. 30-2 at 10. This disagreement alone, *i.e.*, whether Plaintiff was searched incident to arrest or pursuant to a blanket policy applicable to pretrial detainees raises a genuine dispute of material fact sufficient to warrant denial of Plaintiff's Motion. *Compare LeTray v. City of Watertown*, 718 F. Supp. 3d 192, 202 (N.D.N.Y. 2024) (policy requiring that all individuals entering jail's general population undergo a strip and visual body cavity search was reasonably related to a legitimate penological concern and thus constitutional pursuant to *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012)), *with Murphy v. Hughson*, 92 F.4th 177, 185-86 (2d Cir. 2023) (denying summary judgment where the defendants had to have an individualized reasonable suspicion because arrestee did not enter general population and the jail did not have a blanket policy requiring that every detainee be searched).

However, even if the Court adopted Plaintiff's version of events and found that Defendants had to have an individualized reasonable suspicion to conduct the search, questions of material fact persist pertaining to whether such a reasonable suspicion existed. On the one hand, Plaintiff argues that Detective Salle testified at the state court suppression hearing that the only reason for conducting the visual body cavity search was because of Plaintiff's "history" of a previous drug offense, which Plaintiff states is nine years old, and that "[n]o other justification was offered for the search at issue." Dkt. No. 29 at 3-4. On the other hand, Defendants contend that the "history" Detective Salle testified to included Plaintiff's additional criminal history of violent crimes, and that other facts justified the search, including that Plaintiff was seen leaving a residence that was under surveillance for a "shots fired" incident on the day that the search was conducted. *See* Dkt.

No. 30-2 at 9. Defendants also argue that the search was "conducted in private, by a male officer, and did not involve anything physically intrusive," and that Jessica Reed's alleged statement following the search that Plaintiff had drugs on his person supports that the search was lawful. *Id.* While a reasonable suspicion cannot be supported exclusively by Plaintiff's nearly-decade old narcotics conviction, *see* Dkt. No. 4 at 13 (citing cases outlining factors that support a reasonable suspicion), it remains contested whether Plaintiff's prior drug offense was the only reason that the search was conducted. To decide whether an officer had a reasonable suspicion that would warrant a visual body cavity search, courts "must look at the totality of the circumstances." *Sloley*, 945 F.3d at 43 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)); *see also Bobbit v. Marzan*, No. 16-Civ-2042, 2020 WL 5633000, at *11 (S.D.N.Y. Sept. 21, 2020) ("Reasonable suspicion must be assessed 'in light of the totality of the circumstances known to the officers at the time the search was begun.'") (quoting *United States v. Chirino*, 483 F.3d 141, 148 (2d Cir. 2007)). Given the parties' disagreements, and in consideration of the scant evidentiary record that has been developed thus far, the Court finds that unresolved questions remain about the precise circumstances of the search and Defendants' motivations to conduct it. Consequently, the Court cannot grant summary judgment.

As a final matter, the Court notes that Plaintiff may not rely exclusively on Judge Bauer's Decision and Order from Plaintiff's criminal suppression hearing, or documents underlying that suppression hearing, to resolve these factual disputes. In *Nieblas v. Derbshire*, No. CV-93-0242, 1996 WL 331086 (E.D.N.Y. June 11, 1996), a case notably similar to this one, the plaintiff argued that because the state court in the plaintiff's related criminal case suppressed evidence of drugs, the question of whether the search that recovered the evidence was unlawful had already been adjudicated and thus no genuine issue of material fact existed in the plaintiff's Fourth Amendment

case. *See* 1996 WL 331086 at *2-3. The court rejected this collateral estoppel argument, noting that the defendant police officers were not parties to the criminal prosecution, and therefore "did not have a full and fair opportunity to contest the [suppression] decision." *Id.* at 3; *see also id.* ("In the earlier proceeding, neither defendant had (or should have, for that matter) a personal stake in the prosecution's outcome. Here, however, they could be held personally liable for damages to plaintiff.").[5] The court also evaluated the level of influence that a state court decision in this context holds over a federal case, finding that "[i]f the state court judge rested his decision on a violation of state constitutional law, then collateral estoppel does not apply because the issue is not determinative of the question [of] whether the officer's conduct violated federal law." *Id.* at *4. The Court finds this reasoning persuasive.[6]

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment, Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the

---

[5] Federal courts in other jurisdictions have found similarly. *See, e.g., Moore v. City of Desloge, Mo.*, 647 F.3d 841 (8th Cir. 2011) (no collateral estoppel based on testimony in underlying criminal case where defendant officer "did not have a full and fair opportunity to litigate the issues in the prior proceeding") (internal quotations and citation omitted).

[6] In their Opposition, Defendants argue that they are entitled to qualified immunity because "the visual search was made in the context of detaining a suspect in a holding cell, not a jail, [] Plaintiff had a history of both drug arrests and arrests for violent crime" and "[n]o case provides guidance that a search in the circumstances presented here is unreasonable." Dkt. No. 30-2 at 13-14. However, given the questions of fact already discussed herein, the Court is unable to determine as a matter of law that Defendants' actions did not "violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, Defendants' request is denied without prejudice to renewal at the close of discovery.

Local Rules.[7]

      **IT IS SO ORDERED.**

Dated: June 4, 2025
      Albany, New York

_____
Anne M. Nardacci
U.S. District Judge

---

[7] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein.